## JONSSON v. UNITED STATES.

### No. 92, Docket 20365.

Circuit Court of Appeals, Second Circuit.
Dec. 27, 1946.

Edward Arkin and Arkin, Lebovici & Kottler, all of New York City, for appellant.

Raymond Parmer, John F. X. McGohey, U. S. Atty., and Kislin, Campbell, Hickox & Keating, all of New York City, for appellee.

Before L. HAND, AUGUSTUS N. HAND and CHASE, Circuit Judges.

L. HAND, Circuit Judge.

The question in this case is whether the wages—as distinct from maintenance and cure—due to a seaman who has fallen ill upon a ship, sailing under the Panamanian Flag, end when he gets back to the port where he has signed on, or whether they continue thereafter until he recovers. Both sides offered translations, which differed slightly, of the controlling article of the Panamanian Code—Article 1217. The libellant's reads as follows: "A seaman who may become ill or receive injury or mutilation shall be entitled not only to wages up to the time of his recovery but up to the day on which he shall be fit to return to the port of his enrollment, and shall further be entitled to a reasonable sum for his return expenses."

The respondent's version is: "Any member of the crew who is ill, wounded or mutilated shall have the right not only to his wages until he recovers, but also until the day in which he may be back in the port of his engagement and he shall receive in addition a reasonable sum for repatriation expenses."

The only significant difference is that in the respondent's version the words "the day on which he shall be fit to return to the port" appear as: "the day in which he may be back in the port." The respondent called a witness, versed in Spanish law and in the law of Panama, who swore that the libellant's translation was based upon a misunderstanding of the Spanish phrase: "pueda estar de regreso." Although it was true, he said, that "pueda" was from the verb, "poder," and meant "to be able to," yet when it was used as here in conjunction with "estar," it merely put that verb into the subjunctive mood, so that the phrase as a whole did not mean the day on which the seaman was able—"fit"—to return to port, where he had signed on; but that day on which he might arrive at that port. The judge found that the expert's translation was correct, but that in the case before him it did not matter which was right, because in any event the libellant was "fit" to go to New York—where he had signed on—when the ship reached Baltimore,

where he was discharged. This is true; and, for that matter, the respondent's translation was more favorable to seamen anyway than the libellant's, for they might be "fit" to return to the port where they had signed on before they actually did return.

Having disposed of this irrelevant issue, the judge held that the period defined by the clause beginning "but" was necessarily an addition to that defined by the clause beginning "not only"; and in this too we agree. If the order of the two clauses be reversed, so that they read that a seaman is entitled to wages, not only until the ship returns, but until he recovers, there could be no doubt that any period of recovery would be added to the duration of the voyage, if the seaman continued ill; and, if so, a corresponding construction ought to be given to the sequence actually chosen. What the libellant must really maintain is that the clauses mean the same thing as though they had read: "until the seaman recovers, or the ship returns, whichever is later." It needs no argument to show that that would have been a very different locution. Moreover, the respondent's reading is far more reasonable. It is one thing to secure to a seaman his wages for the whole voyage though he may still be unable to work the ship: it is quite another thing to give him wages (as distinct from maintenance and cure), for as long as he remains ill after the voyage has ended. The second would be nothing short of indefinite sickness insurance at full pay: certainly a purpose not gratuitously to be imputed to a maritime statute, in which it would be unique, so far as we know.

Finally, the provenance of Article 1217 puts the respondent's interpretation beyond question. It appeared at the trial that the Republic of Panama had retained a legal expert, named Anderson, to prepare its code; and that he used as his model the Colombian Code, which was based upon the Chilean Code, which in its turn came from the Spanish Code. The corresponding article of the Chilean and Colombian Codes—which are literally the same—is that a seaman who falls ill shall have "the wages agreed upon up to his return to the port of departure"; in the Spanish Code the phrase

is that he "does not lose his right to wages during the voyage." It is utterly incredible that Anderson, by the change in diction which he adopted, intended so radical a transformation of the rights of seamen as that which the libellant asserts.

Decree affirmed.